UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BENJAMIN R. PANKEY, | ) | Case No. 4:09-CV-617 |
| | ) | |
| Petitioner, | ) | Judge Peter C. Economus |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| KEITH SMITH, WARDEN, | ) | (resolving ECF 1) |
| | ) | |
| Respondent. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Benjamin Pankey has petitioned this Court for habeas corpus relief pursuant to 28 U.S.C.

§2254.  Mr. Pankey was indicted for one count of possession of cocaine in the Mahoning County

Court of Common Pleas and was convicted by a jury on December 15, 2006.  (Docket #9, Exhibits

1 and 6).  Mr. Pankey was sentenced to a four-year term of imprisonment.  (*Id*., Exhibit 7).

On January 11, 2007, Mr. Pankey, through counsel, appealed his sentence to the Ohio

Seventh District Court of Appeals and was assigned Case No. 07MA2.  (*Id.*, Exhibit 8).  On January

18, 2007, Mr. Pankey, pro se, filed another notice of appeal with the Seventh District Court of

Appeals and was assigned Case No. 07MA11.  (*Id.*, Exhibit 9).  On February 7, 2007, the appellate

court, sua sponte, dismissed Mr. Pankey's pro se appeal as being duplicative and transferred all

papers in Case No. 07MA11 to Case No.07MA2. (*Id.*, Exhibit 10). On April 3, 2007, before

appellate briefs were filed, Mr. Pankey sought leave of the court to "augment the record" with his

pro se brief "to take notice of his specific issue, i.e., constitutional right to represent himself pro

se[.]" (*Id.*, Exhibit 11).  On April 23, 2007, the appellate court sustained Mr. Pankey's April 3, 2007

motion and deemed it "as a brief raising the single assignment of error that the trial court erred in

2

not allowing appellant to represent himself at the trial of this matter." (*Id*. Exhibit 13).  On May 22, 2007, Mr. Pankey moved the Court to dismiss his appellate counsel and to order a transcript of his arraignment be prepared.  (*Id.*, Exhibit  14).  On June 6, 2007, the appellate court ordered that the transcript be prepared, but denied Mr. Pankey's motion to dismiss appellate counsel as premature since appellate counsel had not yet filed  his brief so as to demonstrate any incompetence, and Mr. Pankey failed to provide a "valid reason for removal."  (*Id*., Exhibit 15).

On August 2, 2007, Mr. Pankey filed his pro se brief alleging that the trial court erred when it: (1) denied his Ohio R.Civ.P. 29 motion; (2) denied his constitutional right to self-represent; (3) allowed the reading of an unsworn document during rebuttal closing argument; and (4) allowed the admission of drugs into evidence when the chain of custody was not established. (*Id.*, Exhibit 16).

On October 29, 2007, Mr. Pankey's counsel filed his appellate brief alleging that: (1) the trial court erred when it failed to make inquiry as to Mr. Pankey's waiver of counsel at the time he requested to proceed pro se, which request was made without counsel; and (2) trial counsel was ineffective for stipulating to a medical document that directly implicated Mr. Pankey. (*Id.*, Exhibit 17).

On June 17, 2008, the appellate court affirmed the judgment of the trial court.  (*Id.*, Exhibit 19).  On August 25, 2008, Mr. Pankey, pro se, filed a motion for delayed appeal with the Supreme Court of Ohio, which was granted.  (*Id.*, Exhibit 20).  On October 28, 2008, Mr. Pankey, pro se, asserted three propositions of law to the Supreme Court of Ohio based on the trial court's: (1) denial of his right to self-represent; (2) admission of an unauthenticated testimonial ex parte statement during closing argument; and (3) denial of his Ohio Criminal Rule 29 motion.  (*Id*., Exhibit 21).

3

On January 28, 2009, the Ohio Supreme Court denied Mr. Pankey leave to appeal and dismissed his

appeal "as not involving any substantial constitutional question." (*Id.*, Exhibit 23).

Mr. Pankey timely filed the instant petition on March 20, 2009, under 28 U.S.C. §2254, and

presents six grounds for relief. (Docket #1). In a supplement to his petition, filed on June 24, 2009,

Mr. Pankey asserts another "Ground 6,"(Docket #6), which the Court will construe as a seventh

ground for relief.

> **Ground One**: Arraignment court erred not demonstrating compliance or inquiry[,]
> thus denying the right to self represent when clearly, unequivocally invoked well
> before trial and failing to adhere to clearly established law.

> **Ground Two**: November 2nd [sic], 2006[,] petitioner hand[-]printed a motion for
> order and clarification claiming the right to represent in pro se. The motion was
> notarized, served by mail on the State, filed with the Clerk of Court[,] but never
> addressed by the court.

> **Ground Three**: The trial court erred at pretrial in response to a pro se invokation
> [sic] that 'first a competency evaluation would be given[,]' which was never given[,]
> abrogating mandatory process, 6th Amendment rights.

> **Ground Four**: Trial court erred allowing the state to read an unauthenticated,
> testimonial, ex parte statement to the jury at closing argument[,] which was unrelated
> to any criminal information abrogating confrontation [clause].

> **Ground Five**: The trial court erred in denying Rule 29 where charges weren't
> substantiated by the evidence.

> **Ground Six:** Counsel was ineffective in stipulating to a medical document reading
> absent the witness who signed the document or to illuminate the information was
> entierly [sic] unrelated to the criminal indictment as in an ex parte statement.

(Docket #1 at 8-15).

> **Ground Seven**: Counsel was ineffective for not objecting - on the record- to the
> defendant being wrapped in a stun gun through the trial absent recorded cause and
> for not asking the court to resolve the issue of pro se representation subsequent to
> order for a competency evaluation prior to allowance of the constitutional right. ***
> Counsel was also ineffective for not objecting to the continuance at pretrial on
> 11/07/06, because if the court had not (continued) the case would have been <u>nolle</u>

4

<u>prosequied</u> due to the mandatory language of ORC 2925.51 Lab Reports. ***
Appellate counsel was also ineffective for not raising the electronic devise being
attached to the defendant during trial[.]

(Emphasis sic). (Docket #6).

Respondent answered opposing the petition. (Docket #9).  Mr. Pankey did not file a traverse.

## I.    *FACTUAL BACKGROUND*

The facts that formed the basis of the Mr. Pankey's conviction were set forth in *State v.*

*Pankey,* 2008 WL 2486523 (Ohio App. 7 Dist.), at ¶¶2-8 ("State Court Opinion").

On February 22, 2006, appellant's parole officer arrived at appellant's residence and
witnessed a visitor enter through the kitchen door and then exit a minute later. The
parole officer approached as appellant stood at the door. Appellant looked at his
parole officer, whom he knew well, shut the kitchen door and locked it. (Tr.
192-193). The parole officer knocked and ordered appellant to admit him.

When appellant complied, he appeared "extremely nervous." (Tr. 193). The parole
officer had interacted with appellant on many different occasions and the demeanor
he exhibited that day was not typical. He was shaking somewhat and was stuttering
a bit. (Tr. 200-201).

The parole officer noticed an Alcoholic's/Narcotic's Anonymous book on the
counter within three feet of appellant. The book's cover was raised in an odd manner,
and appellant did not answer when asked what was under the cover. (Tr. 193). The
officer then discovered a rock of suspected crack cocaine in the book. A field test
and a later laboratory test confirmed that the rock contained crack cocaine. (Tr. 194,
228).

A search of the residence was then conducted. A portable digital scale was
confiscated from the kitchen cabinet. (Tr. 197). No one else was in the house at the
time. (Tr. 198). The parole officer testified that, based upon the disclosures required
of parolees and his observations during prior visits, he believed appellant lived there
alone; although, he noted that appellant's bedroom was in the dining room rather
than in an actual bedroom. (Tr. 206, 208, 219).

Appellant was arrested for possession of crack cocaine. The jail would not admit
appellant due to his high blood pressure. Thus, he had to be transferred to the
hospital for half a day. (Tr. 213). When the laboratory reported a weight of 5.06
grams for the rock of crack cocaine, appellant was indicted for third degree felony

5

possession of crack cocaine in an amount exceeding five grams. See R.C. 2925.11(A), (C)(4)(c).

In December of 2006, appellant's trial proceeded before a jury. His brother testified for the defense that he and appellant were co-tenants on the lease, which was admitted as a joint exhibit. The brother also stated that two other individuals also lived in the residence at the time of appellant's arrest.

The jury found appellant guilty of the possession charge. The court then sentenced appellant to four years in prison.

## II.    *LAW AND ANALYSIS*

For purposes of federal collateral review, all claims adjudicated on their merits by state courts are governed by 28 U.S.C. §2254(d)(1) and (2), which  extends the  permissible range of federal review of state convictions as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim  - - -
>
> (1) resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding (emphasis supplied).

A district court has very restricted Congressionally-granted powers for review under 28 U.S.C. §2254(d).  See *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000)*; Bell v. Cone*, 535 U.S. 685 (2002). The habeas applicant must show either that the state decision was "contrary  to" or an "unreasonable application" of Supreme Court precedent.   The phrases "contrary to" and "unreasonable application" are not the same.   Under the "contrary to" standard of review, the state court's decision is "contrary to" clearly established federal law when it "confronts a set of facts that

6

are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [this] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003); *Williams,* 529 U.S. at 405-06; *Mitchell v. Esparza*, 540 U.S. 12, 15 (2003).  Under those circumstances the Supreme Court has held that the federal court on habeas review may grant the writ. *Id.*  The phrase "clearly established Federal law" refers to holdings, as opposed to *dicta,* of the U.S. Supreme Court at the time of the relevant state court decision. *Lockyer*, 538 U.S. at 71-72; *Williams*, 529 U.S. at 412; *Bell*, 535 U.S. at 698.

Under the "unreasonable application" standard, "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005); *Williams*, 529 U.S. at 413; *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003).  This includes both the state court's refusal to extend and/or its unreasonable extension of existing legal principles from Supreme Court precedent to new contexts.  See *Williams*, 529 U.S. at 407.   The unreasonable application of Supreme Court precedent must, however, be "objectively" unreasonable. *Id.* at 409; *Wiggins,* 539 U.S. at 520-21.  When the state court has rendered a decision, the federal reviewing court  may not grant the writ in its "independent review of the legal question." *Lockyer*, 538 U.S. at 75.  When there has been an "unreasonable application" of clearly established federal law, then no deference is due to the state decision and the federal court is free to resolve the claim independently.

       1.      Ground for Relief 1, 2, and 3

In his first three grounds for relief, Mr. Pankey alleges that his Sixth Amendment right to represent himself before the trial court was violated.  Mr. Pankey argues that the trial court

7

disregarded his verbal and written requests to represent himself and even when the trial court acknowledged his request and indicated that a competency evaluation would be needed before the trial court could grant his request, the trial court failed to order the evaluation.  (Docket #1 at 8-11).

"[T]he universe of clearly established federal law [regarding self-representation] as determined by the Supreme Court, 28 U.S.C. § 2254(d)(1), is narrow." *Jones v. Jamrog*, 414 F.3d 585, 590 (6th Cir. 2005).  "It consists of one decision, *Faretta v. California*, 422 U.S. 806 (1975), the leading Supreme Court decision to reach a holding on the Sixth Amendment right of self-representation at trial." *Id.*  Under *Faretta,* "the choice to represent oneself is at once a choice to exercise an independent Sixth Amendment right, the right to represent oneself, and a choice to forgo another Sixth Amendment right, the right to counsel, and therefore is, in part, a waiver, and must be made knowingly, intelligently, and voluntarily." *Moore v. Haviland*, 476 F.Supp.2d 768, 787 (N.D. Ohio)(Wells,J.), *citing Faretta*, 422 U.S. at 835.

"Hence, the right to proceed pro se and the right to be represented by counsel are viewed as correlative rights in that the assertion of the former necessarily constitutes waiver of the latter." *Moore*, 476 F.Supp. 2d at 768, *citing United States v. Cromer*, 389 F.3d 662, 680 (6th Cir. 2004). "For that reason, courts have prescribed that the trial court conduct an inquiry of a criminal defendant seeking to proceed pro se as to whether he is aware of the consequences of waiving his right to counsel and, further, mandated that the trial judge make a finding on the record that the defendant has knowingly waived his right to counsel." *Id.*, *citing Faretta,* 422 U.S. at 835 and *United States v. McBride*, 362 F.3d 360, 366 (6th Cir. 2004).  "Because the right to counsel is so fundamental, a habeas court will 'indulge every reasonable presumption against' finding a waiver of the right to counsel." *Id.*., *citing Fowler v. Collins*, 253 F.3d 244, 249 (6th Cir. 2001).

8

Such an inquiry and findings on the record by the trial court are only required when the defendant asserts his right to proceed pro se in a clear, unequivocal and timely manner. *Cromer*, 389 F.3d at 682-83 (requiring an "articulate and unmistakable demand to proceed pro se" before mandating the *Faretta* inquiry). Simple expressions of dissatisfaction with counsel are not to be considered a proper request to proceed pro se and a trial court does not have an independent obligation to notify a defendant of the right to proceed pro se. *United States v. Martin*, 25 F.3d 293, 295-96 (6th Cir.1994). Moreover, "once a pro se criminal defendant has invited or agreed to any substantial representation by counsel, the presumption is that such representation by counsel is with the defendant's consent." *Moore*, 476 F.Supp.2d at 787, *citing McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984).

The appeals court addressed Mr. Pankey's self-representation claim as follows:

Appellant points out that he invoked his right to represent himself at the arraignment, in a pro se motion and at the pretrial/status hearing. He complains that the court failed to inquire as to his waiver and violated his right to represent himself.

The arraignment was conducted via videoconference from the jail. An attorney helped appellant present his indigency affidavit to the court from jail. The court then provided another attorney, who happened to be present in person in the courtroom, as court-appointed counsel. The following discussion occurred:

> THE DEFENDANT: I am asking that I be pro se. I am not even asking for public counsel.
>
> THE COURT: Try that again.
>
> THE DEFENDANT: I am not asking or requesting public counsel or a public defender. I prefer to be pro se, representing myself.
>
> THE COURT: Okay. Well, when you do, you let me know. In the interim you are up.
>
> MR. LACZKO: Thank you, Your Honor.

9

THE COURT: Do you have anything you want to say?

MR. LACZKO: No, I will go see him at the jail. (Argnmt.Tr. 5).

It almost seems as though the court misheard appellant's request and believed appellant said he was thinking about representing himself. The state's brief characterizes the arraigning court's lack of action as properly deferring the decision to the court ultimately assigned to hear appellant's trial, and at oral argument, the state noted that courts do not address motions at arraignment. Either way, appellant's request was eventually addressed when raised to the assigned trial court.

For instance, appellant filed a pro se motion for clarification reiterating his request to represent himself. Counsel had it time-stamped for appellant at the pretrial where appellant orally pointed out that he told the arraigning court that he did not want a lawyer. He then asked, 'I don't have a right to not have a lawyer?' The court responded: 'Well, if you would like to represent yourself, I guess you have the constitutional right to do so, but I will have you evaluated to make sure you're competent to represent yourself.' (Status Hrg. Tr. 4).

After some discussion about his background, appellant disclosed that he does not trust public defenders since they previously convinced him to plead guilty to a life sentence over thirty years ago for which he is still on parole. (Status Hrg. Tr. 8). The court stated that appointed counsel is a good defense attorney, that he drives the court crazy trying to get defendants off on technicalities and that he represents many people on death row. (Status Hrg. Tr. 8-9). Appellant replied that counsel seemed nice and noted that he was surprisingly pleased that counsel visited him in jail the prior night. (Status Hrg. Tr. 9).

The court then asked, 'Why don't you let me keep [counsel] on for right now and let [the prosecutor] and [counsel] talk a little bit. We'll go from there. All right.' (Status Hrg. Tr. 9-10). Finally, the court noted that trial was set for the next day but that if a continuance was desired to resolve the issue, the court would grant thirty days, which it then did on the defense's motion.

As appellant points out, a valid waiver of the right to counsel requires the trial court to make sufficient inquiry to determine whether the defendant fully understands and intelligently relinquishes his right. *State v. Gibson* (1976), 45 Ohio St.2d 366, 345 N.E.2d 399, paragraph two of syllabus. *See, also*, Crim.R. 44(A). However, there was no need for the court to ensure the particulars of appellant's state of mind regarding the waiver until it was definitively readvised that defendant still wished to proceed without counsel after hearing the court's advice. Contrary to the suggestion in counsel's brief, the court's mentioning that a competency evaluation would be completed before appellant could represent himself did not bind the court to order a competency evaluation in the absence of a further request to proceed pro se.

10

The court heard appellant's reason for wishing to represent himself and believed that his distrust could be overcome by the particular appointed counsel about whom appellant expressed positive opinions. Upon considering his reasons and reassuring him about his current counsel, the court reasonably provided him with more time within which he could reconsider his request.

As the state points out, the issue was apparently resolved between appellant and counsel as no further request was made. That is, after the court asked if he would maintain counsel, appellant never retorted at the pretrial. Rather, he acquiesced in the court's suggestion, which was not couched in compulsory language and which clearly left the topic open for objection. Thus, although his initial request may have been clear, he equivocated upon the court's assurances. *See Cassanno*, 96 Ohio St.3d 94 at ¶35, 38. Thereafter, he never filed an additional request to reinvoke his right.

Furthermore, he proceeded through trial without expressing any intent to represent himself. In fact, at sentencing, which occurred immediately after trial, counsel voiced that appellant wished to have counsel appointed for purposes of appeal. (Tr. 317).

We conclude that this is not a case of 'compulsory counsel.' *See Faretta*, 422 U.S. at 833. Based upon the particular circumstances existing here, the trial court did not violate appellant's right to represent himself.

(State Court Opinion at ¶¶14-31).

This court has independently examined the relevant portions of the transcripts at issue. The evidence supports the appellate court's determination that Mr. Pankey did not make a clear and unequivocal request that he be allowed to proceed pro se that the trial court did not address. After the trial court addressed Mr. Pankey's concerns, Mr. Pankey made no further requests to represent himself. *See Peters v. Chandler*, 292 Fed.Appx. 453, 457-58 (6th Cir. 2008)(holding that defendant "made no clear and unequivocal demand to appear pro se" when he nodded his head in response to the trial court's indication that appointed counsel would remain). Moreover, Mr. Pankey did not object to being represented by appointed counsel at trial, thereby implying that he consented to representation. *See U.S. v. Jackson*, 304 Fed.Appx. 424, 429 (6th Cir. 2008)(holding that "the post-

11

arraignment acquiescence of the defendant in representation by his newly appointed attorney amounted to a waiver by conduct of the right to self-representation.").

Based on the foregoing, Mr. Pankey has failed to establish that the state decision was "contrary to" or an unreasonable application of clearly established federal law.

        2.    Ground for Relief 4

In his fourth ground for relief, Mr. Pankey asserts that the trial court erred when it allowed the prosecutor to read a jail house medical record during rebuttal closing argument in violation of his Sixth Amendment rights.  The portion of the jail house medical record read by the prosecutor indicated that Mr. Pankey told jail medical staff, after he returned to the jail from the hospital that the hospital,

> couldn't get my BP to comedown.  They kept giving me medicine that's why I was there so long.  I guess it was good I got caught. They said I could have had a heart attack or stroke.

(Docket #1, at 13; State Court Opinion at ¶60).

Federal habeas corpus review of evidentiary rulings based on state law is "extremely limited." *Giles v. Schotten*, 449 F.3d 698, 704 (6th Cir. 2006), cert. denied, 127 S.Ct. 589 (2006). "Questions concerning the admissibility of evidence are generally governed by state law and do not raise a federal constitutional issue, absent a showing that the asserted error infringed a specific constitutional guarantee."  *Bryan v. Hudson*, 2008 WL 2949418 (N.D. Ohio)(Gwin, J), *citing Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987); *Bell v. Arn*, 536 F.2d 123, 125 (6th Cir.1976). An alleged error related to the admissibility of evidence or an error in state procedure is not of constitutional magnitude unless it is so egregious that the petitioner was denied a fundamentally fair trial. *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004); *see also Apanaovitch v. Houk*, 466 F.3d

12

460, 487 (6th Cir. 2006); *Giles*, 449 F.3d at 704. "To determine whether the admission or inadmissibility of evidence has denied a defendant's fundamental due process rights, the court should consider the extent to which the evidence is 'critical' to the case, whether it 'tend[s] to exculpate' the accused, and whether the evidence bears 'persuasive assurances of trustworthiness.'" *Bryan*, *supra,* at *20, *citing Turpin v. Kassulke*, 26 F.3d 1392, 1396 (6th Cir.1994), *quoting Chambers v. Mississippi*, 410 U.S. 284, 297 and 302 (1973).

In this case, Petitioner has made no showing of an infringement on a specific constitutional guarantee. The right to confrontation "may be effectively waived by counsel in open court in the presence of an accused who indicates no dissent." *U.S. v. Joseph*, 333 F.2d 1012, 1013 (6th Cir. 1964), *citing Cruzado v. People*,, 210 F.2d 789 (1st. Cir. 1954); *Fukunaga v. Territory of Hawaii*, 33 F.2d 396 (9th Cir. 1929), cert. denied 280 U.S. 593, 50 S.Ct. 39 (1929). The record simply fails to reflect that the state trial court's evidentiary ruling allowing the prosecutor to read a portion of a jail house medical record, to which defense counsel stipulated into admission, without objection, was so improper as to deny petitioner a constitutionally fair trial. As noted in the State Court Decision, "the records were admitted without objection. Thus, hearsay is not at issue and neither is prosecutorial misconduct or trial court error for allowing comments on facts not in evidence. That is, the facts were in evidence because the exhibit was admitted, without objection for that matter." (State Court Opinion at ¶64). Consequently, this Court cannot review the trial court's ruling on an admitted exhibit, a portion of which was read during closing argument.

13

3.    Ground 5

Mr. Pankey next asserts that the trial court erred when it denied is Ohio Crim.R. 29 motion

for acquittal.  Mr. Pankey asserts that the state failed to establish that he possessed the cocaine in

question, constructively or otherwise.  (Docket #9, Exhibit 16 at 10).

In addressing the merits of Mr. Pankey's claim the state appellate court stated:

Sufficiency is a legal test dealing with adequacy. *State v. Thompkins* (1997), 78 Ohio
St.3d 380, 386 (as opposed to weight of the evidence which entails weighing and
credibility determinations). A conviction will not be reversed on grounds that the
evidence was insufficient unless the reviewing court determines, after viewing the
evidence in the light most favorable to the prosecution, that no rational trier of fact
could find that the elements of the offense were proven beyond a reasonable doubt.
*State v. Goff* (1998), 82 Ohio St.3d 123, 138. In other words, the evidence is
sufficient if, upon viewing the evidence most favorably to the state, reasonable minds
can reach different conclusions as to whether each element has been proven beyond
a reasonable doubt. *Carter*, 72 Ohio St.3d at 553; *State v. Bridgeman* (1978), 55
Ohio St.2d 261, 263. An appellate court reviews a denial of a Crim.R. 29 motion for
acquittal using the same standard employed in reviewing a jury verdict for
sufficiency of the evidence. *State v. Carter* (1995), 72 Ohio St.3d 545, 553. *See, also,
State v. Mayas* (Dec. 6, 2000), 7th Dist. No. 98JE14.

The elements of appellant's offense are knowingly obtaining, possessing or using
five grams or more of crack cocaine. R.C. 2925.11(A), (C)(4)(c). At trial, the state
alleged that he possessed the crack cocaine because he lived there alone, he was
standing by the crack, and the circumstances were suspicious. Appellant argues that
there was insufficient evidence that he knowingly possessed the crack cocaine.

Factually, he disputes the parole officer's testimony that he lived alone by pointing
to the defense evidence that his brother's name was also on the lease. Moreover, his
brother testified that he stayed there on occasion and that he collected rent from two
additional individuals who occupied the two bedrooms. Appellant also notes the
parole officer's admission that appellant's bedroom was in the dining room.

Legally, appellant concludes that there is no evidence that he had control over the
crack cocaine and urges that possession may not be inferred from mere access to the
drug through occupation of the premises. He focuses on the following statutory
language and case law holdings:

"Possess" or "possession" means having control over a thing or
substance, but may not be inferred solely from mere access to the

14

> thing or substance through ownership or occupation of the premises upon which the thing or substance is found. R.C. 2925.01(K).
>
> The mere fact that one is the owner or lessee of premises upon which narcotics are found-where such premises are also regularly occupied by others as co-tenants and the narcotics are found in an area ordinarily accessible to all tenants-is not, without further evidence, sufficient to establish possession in the owner or lessee.
>
> Criminal convictions cannot rest upon mere speculation; the state must establish the guilt of the accused by proof beyond a reasonable doubt. *State v. Haynes* (1971), 25 Ohio St.2d 264, 270.
>
> [T]he mere fact that property is located within premises under one's control does not, of itself, constitute constructive possession. It must also be shown that the person was conscious of the presence of the object. *State v. Hankerson* (1982), 70 Ohio St.2d 87, 91.

*Haynes* dealt with a case where the police found drugs in a residence leased by appellant but occupied by others as well. The Supreme Court found insufficient evidence in that case. However, *Haynes* is distinguishable on various important grounds. For instance, the defendant there was not only absent at the time of the search but had not occupied the premises for a week prior to the search. On the contrary, appellant still occupied his residence and was standing mere feet from the crack, which was sitting on the kitchen counter in an oddly propped book. No one else was present at the time. Moreover, the only evidence presented in *Haynes* was that the defendant's name was on the lease and that he moved out a week before the search. Here, the state presented evidence that a man had visited appellant for a mere minute, appellant then shut and locked the door as he watched his parole officer approach, and upon opening the door, appellant seemed extremely nervous as he stood next to the rock of crack.

Besides distinguishing *Haynes*, we point to other general law relevant herein. For instance, knowing possession can either be established by evidence that the defendant actually knowingly possessed the substance or by proof that he knowingly had control over the substance. *Haynes*, 25 Ohio St.2d at 269-270. Thus, physical possession is not required where there is constructive possession. *See id. See, also, Hankerson*, 70 Ohio St.2d at 91 (dominion and control satisfies possession).

Furthermore, a defendant can be convicted based on circumstantial evidence. *State v. McKnight*, 107 Ohio St.3d 101, ¶75 ('We have "long held that circumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt".'). 'Circumstantial evidence and direct evidence inherently possess the same probative value and

15

therefore should be subjected to the same standard of proof.' *State v. Jenks* (1991), 61 Ohio St.3d 259, ¶1 of syllabus. In fact, when the state relies upon circumstantial evidence to prove an essential element, 'there is no need for such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction.' *Id*.

This court has recently stated, 'readily usable drugs found in very close proximity to a defendant may constitute circumstantial evidence and support a conclusion that the defendant had constructive possession of such drugs.' *State v. Barker*, 7th Dist. No. 05JE21, 2006-Ohio-1472, ¶78 (distinguishing *Haynes* because defendant was present during search), *quoting State v. Kobi* (1997), 122 Ohio App.3d 160, 174. *See, also, State v. Carter* (May 30, 2000), 7th Dist. No. 97JE24 (constructive possession of drugs where alone with drugs in close proximity).

In the case at bar, the parole officer's description of appellant's demeanor (stuttering and shaking) can lead one to believe that appellant was in fact extremely nervous and that the reason for his nervous condition was the rock of crack sitting on the counter. (Tr. 193, 200). Contrary to appellant's suggestion, the fact that he was thereafter found to be suffering from high blood pressure does not require a finding that it was only the high blood pressure that caused him to look nervous rather than his fear of being caught with the crack cocaine. As the state notes, the stress of his parole officer's discovery of the crack cocaine, his arrest and his accompanying knowledge that his parole would inevitably be violated could have triggered his high blood pressure. There is also the telling fact that he shut and locked the door in his parole officer's face as another individual was leaving from his brief visit. (Tr. 191-193). This act implies both nerves and the need to garner an extra few seconds in which to attempt to hide what may have been his recent purchase.

In addition, the parole officer testified that in his numerous encounters with appellant, there never appeared to be anyone else living in appellant's residence. (Tr. 208). He noted that appellant had a duty to disclose any housemates and that he did not do so. (Tr. 219). The claim of appellant's brother that two other individuals lived in the residence could have rationally been disbelieved by the jury. His brother himself had not stayed there in a week and only occasionally stayed in any case. Regardless, appellant was the only one home at the time, and he was acting extremely nervous within feet of the crack which was sitting on the kitchen counter poorly concealed within a book.

Viewing the evidence in the light most favorably to the state, we cannot say that no rational person could find him guilty of knowing possession of crack cocaine. As such, this assignment of error is without merit.

(State Court Opinion at ¶¶34-48).

16

In matters of habeas corpus review (where naturally the petitioner stands convicted), the standard is not whether the court believes the petitioner is guilty but "whether after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. at 3l9, (emphasis in original); *Wright v. West*, 505 U.S. 277 (1992). "[T]he *Jackson* inquiry does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." (Emphasis sic).  *Herrera v. Collins*, 506 U.S. 390, 402 (1993).

The Sixth Circuit has stressed the importance of the state record in making the necessary assessments under §2254(d) with respect to sufficiency of the evidence claims. See *Nash v. Eberlin*, 437 F.3d 519, 525 (6th Cir. 2006). The Sixth Circuit, however, has held that the district court need not examine the trial records if two conditions are satisfied:

(1) the state court opinions summarize the trial testimony or relevant facts; and

(2) the petitioner does not quarrel with that summary and instead contends only that the trier of fact should have reached a different conclusion.

*Clark v. Waller*, 490 F.3d 551, 556 (6th Cir. 2007), *cert. denied*, 128 S.Ct. 630 (2007), *citing Small v. Endicott*, 998 F.2d 411, 414 (7th Cir. 1993)).

 Both of the aforementioned conditions are satisfied: (1) The state court opinion thoroughly summarized the trial testimony and relevant facts; and,  (2) Mr. Pankey rests his insufficiency of the evidence claim on an  alleged lack of evidence that he possessed the cocaine at issue.  As such, Mr. Pankey's sufficiency of the evidence claim does not depend on the federal court's own review of the facts used to support the conviction and there is no need for this court to reference the trial transcript in order to adjudicate this claim.

17

The state appellate court applied *Jackson*'s standard of review through Ohio Supreme court precedent which adopted that measure of sufficiency of the evidence. *See* State Court Decision, *citing State v. Goff* (1998), 82 Ohio St.3d 123, 138. The state decision scrutinized the "essential elements" of the state offenses consistent with *Jackson*, and the U.S. Supreme Court's elaboration that its "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16. Since the State Court Decision acknowledged the correct factors for adjudicating this claim, and applied those factors, there is no issue over whether the state court applied a rule that contradicted governing law. Accordingly, review of this matter has progressed past the issue of whether the state court decision was "contrary to" clearly established Federal law and it is now incumbent upon Mr. Pankey to show an "unreasonable application" of clearly established Federal law. *See Rompilla v. Beard*, 545 U.S. 374, 380 (2005); *Williams v. Taylor*, 529 U.S. 362, 405-413 (2000); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003).

After setting forth the appropriate state law standards with which to determine if Mr. Pankey possessed the cocaine in question, the court turned towards the evidence presented at trial. The state court noted that, Mr. Pankey occupied the premises, that "a man had visited appellant for a mere minute, [that] appellant then shut and locked the door as he watched his parole officer approach, and upon opening the door, appellant seemed extremely nervous as he stood next to the rock of crack[,]" which was hidden underneath an "oddly propped book." The State court then noted that a defendant may be convicted based on circumstantial evidence and that "readily usable drugs found in very close proximity to a defendant may constitute circumstantial evidence and support a conclusion that the defendant had constructive possession of such drugs." (State Court

18

Opinion, *citing Barker*, 2006-Ohio-1472 at ¶78, *quoting  Kobi*, 122 Ohio App.3d at 174; *State v. Carter* (May 30, 2000), 7th Dist. No. 97JE24 (noting constructive possession of drugs where alone with drugs in close proximity)).

The state appellate court followed the *Jackson* standard by making explicit reference to the substantive elements of the criminal offense as defined by state law.   Mr. Pankey has failed to demonstrate that the state decision involved an "unreasonable application" of clearly established federal law.  28 U.S.C. § 2254(d)(1).   Moreover, as Mr. Pankey failed to present clear and convincing evidence that he did not possess the cocaine, he failed to meet his burden of rebutting the presumption of correctness given to the judgment of a State court.  28 U.S.C. § 2254(e)(1).

4.     Grounds for Relief 6 and 7

In his sixth ground for relief, Mr. Pankey argues that trial counsel was ineffective because he stipulated to the "reading" of the medical document discussed in ground four, *supra*.  Mr. Pankey also argues ineffective assistance of counsel in his seventh ground for various reasons.   For the reasons discussed below, both grounds are procedurally defaulted.

"A petitioner seeking a writ of habeas corpus must meet certain procedural requirements to permit review of his habeas claims by a federal court."  *Murphy v. Ohio*, 552 F.3d 485, 501 (6th Cir. 2009), citing *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 431 (6th Cir. 2006).  "A federal court will not review claims that were not entertained by the state court due to either the petitioner's failure to raise those claims in the state courts while state remedies were available or the petitioner's failure to comply with a state procedural rule, thereby preventing the state courts from reaching the merits of the claims."  (Emphasis added).  *Murphy*, 552 F.3d at 501, citing *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006).

19

The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose,* 811 F.2d 322, 325 (6th Cir. 1987). In order to satisfy the exhaustion requirement, the petitioner must present the claim "to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated. *McMeans*, 228 F.3d at 681, *citing Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2nd Cir.1984).

To "fairly present" a federal constitutional claim to a state court, a petitioner must give the highest court in the state a full and fair opportunity to rule on his claims. *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). "A petitioner can take four actions in its brief which are significant to the determination as to whether a claim has been fairly presented: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004), *quoting Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

If a petitioner has no remaining state remedies but has failed to present all claims to the highest state court in a federal constitutional context, then petitioner's state remedies are exhausted, but petitioner has procedurally defaulted the claims. *See Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir.1996); *Hannah v. Conley*, 49 F.3d 1193, 1195-96 (6th Cir.1995).

20

"[A] petitioner can overcome the procedural default, [however], by either 'demonstrat[ing] cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrat[ing] that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Jells v. Mitchell*, 538 F.3d 478, 488 (6th Cir. 2008), *quoting Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "'Cause' for default requires a showing that 'some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" *Jells*, 538 F.3d at 488, *quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986). "'Prejudice' requires a showing that the errors at trial 'worked to [petitioner's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Jells*, 538 F.3d at 488, *quoting United States v. Frady*, 456 U.S. 152, 170 (1982). "Additionally, under the miscarriage-of-justice exception, the Court may consider an otherwise defaulted claim if it concludes that the petitioner has shown that the 'constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Jells*, 538 F.3d at 489, *citing Schlup v. Delo*, 513 U.S. 298, 327 (1995), *quoting Murray*, 477 U.S. at 496.

Mr. Pankey alleged three errors to the appellate court in his pro se brief: (1) violation of his right to self-represent; (2) erroneous denial of his Crim.R. 29 motion; (3) and prejudicial error when the trial court allowed the unsworn medical record to be read during closing argument. (Docket #9, Exhibits 11 and 16). Appointed appellate counsel alleged two errors in his brief: (1) violation of his right to self-represent without inquiry as to waiver of counsel; and (2) ineffective assistance of trial counsel for stipulating to the admission of the jail house medical record. (Docket #9, Exhibit 17). On appeal to the Supreme Court of Ohio, Mr. Pankey alleged error by the trial court when it: (1) denied his Crim.R. 29 motion; (2) violated his right to self-represent; and (3) allowed a

21

testimonial statement (the jail house medical record) to be read during closing argument. (Docket #9, Exhibit 21).  Mr. Pankey's claims on habeas corpus related to ineffective assistance of counsel were arguments never made to the highest state court.

Accordingly, Mr. Wheeler has failed to exhaust his state remedies and because no state procedures for relief remain available to him for this ground, he has procedurally defaulted.  *See Simpson* and *Hannah*, *supra.*   *See also O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999)(considering "[w]hether a petitioner who fails to present his claims in a petition for discretionary review to a state court of last resort has properly presented his claims to the state courts and concluding that because the answer is 'no,' the petitioner has procedurally defaulted his claims."); *Teague v. Lane*, 489 U.S. 288, 297-99 (1989) (stating that a 14th Amendment equal protection claim is forfeited following exhaustion of state remedies and failure to raise claim to state courts).

Mr. Pankey's petition does not attempt to demonstrate cause and prejudice or actual innocence.  Mr. Pankey did not file a traverse.

Based on the foregoing, it is the recommended that Mr. Pankey's sixth and seventh grounds for relief be dismissed due to procedural default.

### III.     *CONCLUSION AND RECOMMENDATION*

Following review of the arguments raised in the petition and applicable law, petitioner has not demonstrated that he was in custody pursuant to state court judgment that resulted from a decision that is "contrary to" or involved in an "unreasonable application" of federal law as determined by the Supreme Court of the United States.  See 28 U.S.C. §2254(d)(1).  Further,

22

there has been no demonstrated need for an evidentiary hearing and the petition for habeas

corpus relief under 28 U.S.C. §2254 should be denied and dismissed.


_____/s/James S. Gallas_____

United States Magistrate Judge


*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court

within ten (10) days of mailing of this notice.  Failure to file objections within the specified time

WAIVES the right to appeal the Magistrate Judge's recommendation.  *See*, *United States v.*

*Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).


Dated: <u>September 22, 2009</u>